Good morning, Your Honors. My name is Jennifer Sung, and I represent pro se plaintiff Richard Gale on his appeal from the Nevada District Court's dismissal of his claims with prejudice. I will try to reserve three minutes for rebuttal. The facts, as alleged in the complaint, are as follows. Mr. Gale needed to identify the current owner of his home mortgage loan in order to negotiate a loan modification. He sent two letters requesting this information to First Franklin, which served as both the initial creditor and the servicer of his loan. First Franklin did not respond to either letter. Section 1641F2 of the Truth in Lending Act requires a servicer like First Franklin to provide a borrower with information about the current owner of his loan upon written request. Therefore, First Franklin's failure to respond to Gale's letters violated TILA section 1641F2. Yeah, okay, I got the argument, but I have trouble with the part where you say that a servicer like First Franklin is the same servicer as is referred to in the second sentence of F2. As I read the first sentence of F2, it's talking about a servicer who is also the owner, but only for purposes of administrative convenience. And then the second sentence, at least as I read F2, incorporates that implicit or explicit definition and says such a servicer, but it doesn't say such a servicer. It says the servicer. But as I read it, the servicer means a servicer who is also an owner, but only for purposes of convenience. And First Franklin doesn't qualify if that's the definition of servicer in that second sentence of F2. How do you respond to that? Your Honor, TILA has expressly defined servicer to include any servicer, including a servicer who owns or was the owner of the loan. So when it drafted section 1641F, it had that definition of servicer in mind. It explicitly cross-references the definition of servicer, which includes creditor servicers like First Franklin. How do you respond, though, to my sense that the second sentence really is a reference back to the first sentence of F2, which gives us a particular kind of servicer, a servicer who is an assignee and owner only for purposes of convenience? The head of that sentence, that section, says liability of assignees. Yes, Your Honor. Not liability of owners. It says liability of assignees. So we start with the proposition that their entire section deals only with assignees, or at least I do. Yes, Your Honor. The start of section 1641 applies to assignees. But section 1640 Is Franklin an assignee? First Franklin is not an assignee. First Franklin is a servicer and a creditor. But it's not an assignee. It's not an assignee. Okay. But 1641F explicitly says treatment of servicers, and then it defines servicer to include a servicer who is an owner of the loan by cross-referencing the definition of servicer that's in RESPA, which explicitly defines a servicer to include the owner of a loan. So if you take those together, section 1641F was meant to apply to all servicers, including servicers who are also creditors. It seems to me that the difficulty with that is, although we don't necessarily take the title to the subsection as definitive, the title does describe what you actually see inside the section in this case. So the first part basically says if you're a servicer and you're an assignee just to administer the loan, you don't become an owner. Do you agree with that? Yes, Your Honor. And so then it goes on to say, but on written request, the servicer, and I think Judge Fletcher and I are suggesting that that harkens back to the servicer we just talked about, that is, a person who's an assignee, a company who's an assignee but not an owner, and then it goes on from there. And you're suggesting that you would fill that gap somewhere between sentence 1 and 2 just with the general definition of servicer? Yes, Your Honor. So I believe the first sentence that Your Honors are referring to in section 1641F2 is simply clarifying that a servicer who is not a true owner of the loan, either as a creditor or as an assignee, a servicer who's only servicing the loan and who may have some kind of technical ownership right but only for administrative convenience, cannot be held liable as an assignee even if there was a facial TILA violation, as 1641A provides. However, servicers, all servicers, have to respond to a borrower's written request for information about the ownership of his loan. Let's stick for the moment with just the first sentence of F2, and I'll just read it. Sure. A servicer of a consumer obligation arising from a consumer credit transaction, okay, a servicer, shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from a creditor or other assignee. In other words, we're talking about a servicer who is an assignee, either from the original owner or from a later assignee, but prior to this assignee, solely for the administrative convenience. That sentence tells me that the servicer in question here has to be an assignee. We're only talking about servicers who are assignees. Do you agree with that or not? I agree the first sentence is clarifying that a servicer who is not truly an owner of the loan should not be treated like an assignee. However, I don't believe that the second sentence of that, that sentence doesn't modify the second sentence in the way that Your Honor is suggesting. It's simply clarifying. So you're saying that the second sentence, when it says, upon written request by the obligor, the servicer. Yes. You're saying the servicer in the second sentence is not referring to the servicer described in the first sentence? It is referring to all servicers. It's not saying only servicers who were assigned the loan for administrative convenience. It is saying the servicer shall provide the obligor to the best of its knowledge. And the reason for that. Yes. If we take that position, why is it when you have all of Section 1641, which deals with assignees, which Franklin is not, why would it make any sense structurally for statutory interpretation to say it all relates to assignees, and then we happen to have this one little sentence that doesn't really relate to assignees. It just relates to all servicers. So it doesn't make, it doesn't give you any statutory regularity if we interpret it your way. What is your response on that? Yes, Your Honor. Section 1641F says treatment of servicers. So it is introducing a new subject of regulation, servicers, who may be assignees, who may be creditors, or who may be neither. Although Section 1641 could have been slightly more artfully drafted, it is a remedial statute that must be liberally construed in favor of the borrower. In this case, nothing about the disclosure requirement of Section 1641F2 is conditional or is limited. It says straightforwardly that the servicer shall provide the obligor with information about the owner of his loan. That requirement, that disclosure requirement, was designed to address a very basic and fundamental problem that borrowers face. Congress recognized that borrowers are having trouble identifying the owners of their loans, and Congress understands that servicers, who are the ones who are collecting payments from the borrowers, are the ones who are most well positioned to provide that information to the borrower. The borrower, the servicer is the only entity that the borrower is currently in communication with. So if the borrower needs to identify the owner of his loan, he's going to write to his servicer. He's going to contact his servicer for that information. Congress recognized this. Congress also recognized that borrowers are not going to be able to distinguish between a servicer. The borrower doesn't know, is my servicer an assignee? Is my servicer assigned ownership of the loan only for its administrative convenience? Well, I'm very sympathetic to the argument. That is to say, put yourself in the position of a mortgage borrower. You're in trouble. You want to know who the actual owner is, so you can talk to the or negotiate with the original owner for some reduction in principle, some modification. I got all that. Yes. My problem is 1641 refers to obligation of assignees, and at the very outset it says the obligation of the assignee is limited to what's on the face of the document. And then there's a whole lot of elaboration about who is an assignee, whether a servicer is an assignee, the obligation of the servicer who is not an assignee in the sense of F2 to say who the real assignee is. I got all that stuff. But I don't see in 1641 an obligation of the servicer who is not an assignee to say here's the owner. I mean, it's a perfectly sensible requirement that the servicer should say who the true owner is. I got that. I'm having trouble with the statutory language. Respectfully, Your Honor, the statutory language, I believe the statutory language that you're referring to, Your Honor, is limiting which servicers should be treated like assignees. It's saying a servicer who's only an owner for administrative convenience shouldn't be held liable for the original creditor's TILA violations if it's only an owner for its administrative convenience. But it's not modifying who's a servicer for purposes of the disclosure requirement. Kagan, to what extent is the 2009 amendment helpful to you? I understand the 2009 amendment comes into effect after the operative events in this case, but is the 2009 amendment helpful to you and in what form? Yes, Your Honor. It clarifies Congress's intent, both as to whether there's a private right of action to enforce Section 1641F2 and to Your Honor's concern about whether Section 1641F2 applies to creditor servicers. Because it modified Section 1640A, which on its face expressly applies to creditors. And it says that creditors are – there can be a private right of action to enforce against any creditor any requirement of TILA Part B. When Congress amended that section, it made explicit that which was already implied, which is that TILA Part B includes Section 1641F2. If Congress did not intend for creditor servicers to comply with Section 1641F2, it would not have explicitly referenced that section in the private right of action that applies only to creditors. Yeah. I mean, I think clarification means here something like, oh, we're going to rewrite the statute. In this case, Your Honor, TILA Section 1640A has always applied to any requirement of TILA Part B. And Section 1641F2, when it was enacted, was always in TILA Part B. All that Congress did was modify the list of illustrative examples of sections that are included in TILA Part B. Congress did not change the scope of Section 1640A or any of the language in Section 1641F2 when it modified Section 1640A. The only thing it did was say, well, the statute says there is a private right of action against any creditor for any requirement of TILA Part B. All Congress did was add to the list of things that it says are included in TILA Part B. But that has – Section 1641F2 has always been in TILA Part B since it was enacted. So if we agree with you, what's the measure of damages in this case? Your Honor, TILA provides for – Section 1640A provides for both actual damages and statutorily provided damages. And what are your actual damages? In this case, there is no information on the record as to that, but at a minimum, it would be the cost that Mr. Gale has incurred into – for prosecuting this claim. Okay. I'm interested in your State law claims and the citation to Mitchell, which I guess shows up once counsel arrives on the scene here. And if you take Mitchell to its logical extension, I guess it would mean that in every case, even if you have a defaulting obligor, that the creditor always has or the contract holder always has some obligation to try to renegotiate with you before you default fully. Is that what Mitchell says? I mean – It's – Mitchell says that the creditor or the – has an obligation to enforce the contract in good faith. And in this case, that Mr. Gale reached out and attempted to negotiate a loan modification, attempted to identify the current owner of his loan in order to do so, and those efforts were rebuffed. A prior fact could conclude that the failure to respond to his request for information and the failure to respond to his attempts to negotiate a loan modification were in bad faith. That's a question of fact. The question I have about that, which, again, I'm very sympathetic to his situation and his mortgage situation, but does that mean that any time somebody can't pay, doesn't pay, is in default of the contract, and right now we'll just limit it to mortgage contracts, forgetting all the other contracts, that a bank or other finance organization would have an obligation? I don't think that we're arguing for a per se rule, that in every case a creditor has to do that. There's – in this case, the plaintiff attempted to negotiate a loan modification, made efforts that were ignored, and that's – Anybody who then wants a modification of their contract would have, under your view, a Nevada State law claim. You haven't given us any limiting principle. Well, in – Nevada State law is clear, Mitchell, that the question of whether there was a breach of the duty of good faith is a question of fact. That is a question for Nevada prior fact to decide, whether First Franklin's conduct in this case is a breach of the duty of good faith. You don't need to go as far as I think you're trying to go. That is to say, the only obligation that you're seeking to impose upon First Franklin is not an obligation to renegotiate, because First Franklin is no longer the owner. The only obligation you're trying to impose on First Franklin is, tell me who it is so I can talk to the person. That's a pretty limited obligation. Yes, Your Honor. There is no – there's no – it's not clear at this point who is the owner of the loan and who had a duty to negotiate with them. No, but there are two different theories. I think the theory you advanced under Mitchell. Right. No, there are two different theories. If you're – if there's a broad-based Mitchell claim that you have a duty to renegotiate, that seems to me to be new in Nevada law. If you're just arguing that you breached the covenant of good faith and started dealing because you didn't tell me with whom I should contact so I could renegotiate and therefore deprive me of the opportunity of it, that's a separate argument. Yes, Your Honor. We made both arguments in our briefs. And the primary argument is that First Franklin breached its duty of good faith by failing to respond to Gail's request for information. And that was a basic obligation it could have met and didn't. A trier fact can conclude that that was a failure to comply with the contract in good faith. All right. Thank you, counsel. Thank you. Good morning, and may it please the Court. Colt Dodrell for LaSalle Bank National Association. And would you move the microphone? There you go. Thank you. Thank you. As trustee for the loan trust, First Franklin Financial Corporation and Mortgage Electronic Registration Systems, Inc., this Court should affirm the district court's dismissal of Gail's claims. Simply put, his TILA claims not only were properly decided by the district court but have become moot by Gail's receipt of the requested information. The wrongful foreclosure claims are unripe because he maintains possession and title of that property, notwithstanding not making mortgage payments for the last four years, and simply has no damages to support a State law claim for the same reason. He's simply living for free for four years and has incurred no damages. How much of what you're telling us is in the record? He hasn't made a payment. No. Is that in the record? I think not. I do believe he stated in his complaint that he had some financial issues. He never disputed the default. We did move to dismiss the wrongful foreclosure claim under Collins, which is a Nevada case that says if you're in default, you don't have standing to challenge a foreclosure. So that should be in the record. Now, because the dismissal was in 2009 and we're three years down the road, there's nothing in the record on the last three years in terms of whether he's made payments as an officer. Or whether he stayed on the property? Well, footnote 31 of Mr. Gale's replacement brief does discuss the foreclosure under Nevada foreclosure mediation rules. There are some amendments that happened shortly after this case was dismissed. Nevada amended its foreclosure statutes, adding NRS 107086, that now in addition to the notice of default, the trustee has to provide the homeowner under specific, basically if it's his primary residence, has to provide him an election to mediate. And the notice of sale cannot go forward unless the trustee receives from the Nevada foreclosure mediation program, which is operated out of the Nevada Supreme Court, a mediation certificate. So you haven't gotten to that stage yet? He had a mediation. Footnote 31 says he sat down, he had a, there was a mediation. They couldn't agree on a loan modification. And there were some issues with whether the documents were correct and that the trustee did not strictly comply. And therefore, they have to re-notice the default and allow Mr. Gale to, the opportunity to elect a new foreclosure mediation. And in the meantime, under Nevada law, because no foreclosure has gone forward, he remains in the property. Of course, we don't really know any of that. We take it on your faith and on counsel's faith. But that's not the basis of the district court's decision. That's not the basis of the district court's decision. The basis of the district court's decision was the foreclosure was proper, which is a little awkward since the foreclosure hasn't been completed yet. It's been withdrawn. I'm sorry? It's been withdrawn, according to you. It has been withdrawn. Mr. Gale stated on the record in the hearing on the motion to dismiss this. In that case, would that aspect be moot? Leaving aside the TILA, would that State law claim be moot with respect to MERS? The MERS claim really should be moot because the default notice that triggered this, the suit, was rescinded. Right. Okay. So it may be moot. We may ask you to brief that because we don't have any of that on the record. And we don't. I mean, we couldn't decide today that it's moot based on your representation. You can't. But you can decide that it's unripe because there's been no notice of trustee sale. Well, there was on the record. I'm sorry. There's no trustee's deed. The sale never went forward. I apologize. There's no trustee's deed. I mean, if you take the record as it sits, he still has standing to challenge that. He does. Let's get back, if you don't mind. Absolutely. To the issues in front of us. Are you contending that First Franklin had no obligation to tell Mr. Gale who was the servicer of the loan? Under 1641. How about under the loan documents? Not under the loan documents. Loan documents say that whenever there's a change in assignment of the loan, you're obligated to tell the borrower. No, that's true. The 2009 amendments to RESPA, not TILA, did require servicers to notify the borrower that their loans had been assigned. And that wasn't sued under and, of course, that wasn't in effect. Mitchell, which I think was mischaracterized by Gale, the we talk about contracts, we talk about mutual assent and what did the parties agree to at the time they sat down and had a contract. The contract in Gale, I'm sorry, the contract in Mitchell is unique. That's a storage facility. And the terms of that contract in the third paragraph of that decision from the Nevada Supreme Court tells us that the storage facility in response to three consecutive nonpayments had the obligation to perform in that it had to form a subjective opinion of the company such that such action would be necessary to protect accrued charges. Basically, the storage facility had to form a subjective opinion as to its tenants' creditworthiness. That or … Well, it's hard to see how far Mitchell will go. I mean, we've had some similar cases in other states where, in fact, the state courts have gone and expanded the right stated in a Mitchell-like decision to a more general covenant of good faith duty. It's hard to know at this point where Nevada is going to go with this. Well, it may be, but Mitchell is very narrowly decided as to the specific terms of that contract. The subjective opinion forming is not a requirement in the note in deed of trust. No, but it would … It's a claim, though, that typically the duty of good faith raises factual issues and whether or not there's an implied covenant of dealing in good faith to simply provide this information is a question of fact. Well, there's two easy answers to that. One is, under longstanding Nevada principles, which isn't far off from the common law that we know in contracts, is once a party materially breaches, the other side doesn't have to perform. So if First Franklin doesn't have to perform, then its performance can't be in bad faith. You can't breach the covenant of good faith in fair dealing unless you have performance due. In Mitchell, the tenant storage facility had performance due. First Franklin does not. The second answer is … Are you saying that each time a borrower is in default that the creditor has no obligations whatsoever under the loan? No. No, the creditor has obligations, but they are statutory. Under the statutory scheme, 107080, there's three foreclosure documents, the notice of default that has to be complied with, and now, of course, in terms of complying with the amendments which require the foreclosure mediation, the notice of sale, and then, of course, a trustee's deed upon sale. And I should just mention, since we're here, that Murr's name appears on none of those documents. Murr's, it wasn't foreclosing. CalWestern was at the instruction from First Franklin and the beneficiary, LaSalle Bank National Association, as trustee for the loan trust. But Mr. Gale had that information, and that's what … That information. What information? The information of who to contact. He says, I don't know who to contact. I don't know who to call. I want to mediate the loan. Now, we know from footnote 31 that he did mediate. But the – what's in the record is the notice of default that says, you are in default. Contact LaSalle Bank National Association as trustee for the First Franklin Mortgage Loan Trust series, and gives contact information, an address and a phone number. And that same information is also in the assignment which Mr. Gale raises as a defense to the foreclosure, which, of course, you don't have to have the note and the deed of trust, and the Nevada Supreme Court has addressed that. And I think a panel … So your – is your argument, then, that whether First Franklin had an obligation or not to tell him who the assignee of the substance of the loan was doesn't matter because he knew it already? That's one of the arguments. The other one is … Well, let me stick – let me stick with that argument. Sure. Are you saying that, in fact, LaSalle was the owner and he therefore knew it? I mean, is that – is that the argument? That's what's in the record, yes. Well, that's a factual defense. The only thing I'm concerned about is the timing of that vis-à-vis his … The timing is really – according to his complaint, his first request was June 5th. His second request was August 6th, and these are in 2008. The notice of default came two days later, August 8th, 2008. And the notice of default says, you're in default, contact LaSalle Bank. And kind of the step back of … Now, I confess I don't have that notice of default here in front of me. Does it say contact LaSalle Bank, who is the owner of the loan? It says contact LaSalle Bank National Association. I don't think it specifically says owner of the loan or beneficiary. That's what the assignment says. And Mr. Gale …  The record's not clear as to whether he got the assignment. We do know he had it, because otherwise he would not have sued LaSalle Bank National Association. He wouldn't have known about it. It's funny. He says, I don't know who the holder of the note is, I don't know who the holder of the note is, yet he somehow managed to sue it. And at what point is the suit filed in relation to when those first two letters were – those two letters were sent to your client, to First Franklin? You know, I don't have the date. I don't have the date.   But I do have the date. I have the date. And the first – the initial complaint was filed. But it was before – we're still in 2008, so it wasn't too long afterwards that he filed suit. You know, it just strikes me as odd that a servicer who knows the name of the holder of the note simply refuses to answer letters, which is – it's a perfectly sensible question. I mean, the servicer has no skin in the game. I mean, all you've got to do is answer the letter. You're sending money to that person, to that entity, but you just won't tell him who that person is. I don't get it. Well, keep in mind, we're here on a 12b-6 motion to dismiss, so there was no discovery. So we're assuming everything in his complaint was true. Well, of course, but that doesn't change the question. No. If I could tie Your Honor's question in with the TILA analysis, I don't think we need to go through the legal gymnastics of whether you're a servicer, an accreditor, what's going on. Congress recognized this. And they amended, in addition to the TILA amendments in 2009, they amended RESPA in 2010 under Dodd-Frank. And they made it real simple. A servicer, not a servicer who was a creditor who's not a creditor under certain circumstances, very simple, a servicer within 10 days must respond to a borrower's inquiry as to the lender on the note. And that's a new section to RESPA, 2605K2D. And that's in Gail's brief. And that tells us that Congress recognized there was a gap. Yeah, but I don't get it why your client simply refused to do that. Well, we don't know on the record whether they did or not. Well, they failed. At least we know they failed. Whether they refused, that's an act of will. So at least we know they failed. At this point, it's speculation. We look at the language. Let me back you up. Let's assume hypothetically a lender, not your client, gets the similar letters and doesn't respond. Prior to 2010. Prior to the amendments, if a lender. Right. A lender doesn't respond. To the question of who's the servicer. I mean, your contract says you've got to let them know what the servicer is. Right. I mean, the contract says that. Forget the statute. Well, sure. You're in breach of the contract. Is it your position that if I heard you correctly before, and I may not have. Okay. Is it your position that if a borrow is in default, that a lender or a servicer has no duty to respond to a letter inquiring who the servicer is? He has no duty under the common law or under the contract. He, of course, he now has duty under RESPA, but there's simply no performance due other than what's imputed into the contract by State law, which, of course, is the foreclosure statutes. Deeds of trust are governed by an internal chapter. So under this contract, he also had no duty to provide the name? I didn't see that in the deed of trust. It's in the deed of trust. You've got to provide the name. It says when you change the ownership, when you change servicing. When you change servicing. Right. Now, he alleges he never got it. Now, he says I don't know who it is. You may dispute that factually, but we take the record. I don't know who it is. Who is it? And your client allegedly doesn't respond. I don't see, if you're just even looking at the covenant of good faith and fair dealing, why that isn't a viable claim. Now, the damages may be speculative. I don't know about that. But certainly, if you have the duty to provide it initially when you change it, you certainly have an applied duty to provide it when somebody asks about it. Right. I just want to clarify. You said servicer. He knows who the servicer is because they're the ones sending him the bill. He's asking his servicer who owns this note. Right. Well, it's in the same paragraph. Right. It is. And you look at the language, and he attached the actual letters to his complaint, his first-name complaint. He's asking who's the true owner of the obligation and what's your relationship. This isn't a – the covenant of good faith and fair dealing runs both ways. And he's not saying I have a legitimate – who owns this note? I really want to know so I can sit down and contact them. He's trying to raise this holder of the note as a defense to the foreclosure, which we saw in the complaint and also in the briefing. He asks for the owner, doesn't he? He asks for the true owner, and then in the June 5th letter, he asks for who's the present holder of the note. And I can't say why First Franklin didn't send him a letter and say, it's LaSalle Bank National Association, you can contact them, care of us, because we're the ones. But when they get the default notice on August 8th, he's told to contact LaSalle? LaSalle Bank National Association, care of, and name and address. Right. And so he has that information. So it's our understanding that the TILA claim would be moved. He's also raised arguments regarding the assignment, which means he has that. And, of course, he sued LaSalle Bank. Nobody – how would he know? He would sue First Franklin and say, you never told me who it was. But if we look at the complaint, he sued LaSalle Bank National Association, which appears on the assignment and the notice of default. He's sued First Franklin, who's his loan servicer, who sends him his mortgage statements each month. And he sued MERS for some reason, which I think this Court fully addressed the MERS argument. And what's odd is in paragraph 11 of his First Amendment complaint, he says, well, all the defendants are agents and principals of each other, and they're all working together. Well, if we're all agents and we're all principals, then there's no separation of the note. The foreclosure is good. Good faith and fair dealing. And it's a good thing. You really don't have – how are you damaged by living in a house for free for four years? That's – But he – would he be permitted, since this is on the 12b6 stage, if on its face he hasn't alleged sufficient violation of Nevada state law, shouldn't he be permitted to amend to make – to be able to make that effort? I disagree. I don't think so. I think if it was remanded, it would be subject to a motion for summary judgment where he would have the obligation to come forth witnessing damage. Well, you might be able to amend before you had your summary judgment motion, couldn't he? Now that – because they dismissed it on a 12b6, typically you get a chance to amend, then you'd have discovery or no discovery, and then you'd have summary judgment, and maybe he would wear his suit.  He would have the obligation to state a claim. He still has to state a claim. And with the good faith and fair dealing, I think that would – if there was a TILA, and of course there's not because you don't construe a statute that way, you can't take something, just one sentence out of context and say, oh, this is what it means. You have to look at it in the court. We're talking about the state law. State law claim. Right. Not federal statutory claim. Sure. I don't think he would have – there would be any claim that he could state. There's numerous case law out of federal courts in Nevada that say there's no duty of good faith and fair dealing in a mortgage loan context, and especially subsequent to a default. Maybe we should certify it. I have a question of the Nevada Supreme Court, if you think it's so clear. I don't think it's – There's obviously no Nevada Supreme Court opinion on that, except for Mitchell, which comes close. But, again, Mitchell is specific to terms of a contract that we don't have here. That's what I'm saying. Again, I think that that claim, because of – he suffered no damages. He almost lacks standing, and that may – we start talking into now maybe it's an advisory opinion because he's got no damages to come into court. I think we have your position. I see my time's over. I appreciate it. Thank you.  Thank you. Thank you very much. We'll give you a couple minutes. Would you respond to the argument in Franklin's brief that the TILA claim is moot because he got the information right after? Yes, Your Honor. The claim is not moot for two reasons. First of all, TILA provides a claim for damages, which is not moot, including statutory damages. Secondly, the assignment of the deed of trust is a distinct document. Nevada's Supreme Court clearly holds that the assignment of a deed of trust is a distinct document from the note itself, and that being an assignee of the deed of trust does not mean that you are entitled to enforce the note. It doesn't make you automatically a note holder. Therefore, this ends, as Your Honor pointed out earlier, the assignment of the deed of trust simply says contact LaSalle Bank. It does not actually say that LaSalle Bank is the current note holder, nor does the assignment of the deed of trust itself prove that LaSalle Bank is the current note holder. So at this point, there is no proof on the record that satisfies Nevada State law's standards as to who the current note holder is. You're going to likely lose on that if you go to summary judgment, right? Well, at this point, Your Honor, there – it's unclear whether – which defendant is the actual note holder, if any of them, and whether they can prove that they are – that they actually have the authority to enforce the note. What is at issue here is whether Gail stated a claim that no defendant, none of the foreclosing parties, actually had standing, actually had authority to foreclose upon his home at the time that they initiated the foreclosure process. And the Nevada Supreme Court clearly held, albeit in an unpublished opinion, Faust, that that states a claim. When a plaintiff says the foreclosing party did not have authority to enforce the note on my house, that that states a claim under Nevada law, and it should be reversed on the motion to dismiss. Okay. Thank you, counsel. And I want to thank Ulster-LaBerzone for its pro bono representation. The Court appreciates it. The case just heard will be submitted for decision.
judges: Thomas, McKeown, Fletcher